UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Kimberly B. Winburn, | ) | Civil Action No.: 4:11-cv-03527-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Progress Energy Carolinas, Inc., | ) | |
| and Prudential Insurance Company | ) | |
| of America, | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the court are cross-motions for summary judgment by the plaintiff (ECF No. 64) and Defendant Progress Energy (ECF No. 61). Also before the court is Defendant Prudential's Motion for Final Judgment on the Administrative Record (ECF No. 63).[1] Plaintiff asserts entitlement to certain benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (i.e., a claim for benefits), a claim for attorney's fees pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and a claim for equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3) (i.e., a breach of fiduciary duty claim). The parties entered into a Joint Stipulation agreeing to certain relevant portions of the administrative record and certain relevant portions of the plan documents. They agree that the plan documents confer discretion upon Prudential and that the applicable standard of review for the claim for benefits (the Section 502(a)(1)(B) claim) is an arbitrary and capricious standard

---

[1] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." The issues have been briefed and the administrative record has been submitted by the parties, and the Court believes no hearing is necessary.

of review.[2]  The Joint Stipulation also provided that "[t]he parties do not agree on the application

of the arbitrary and capricious standard of review to Plaintiff's claims under ERISA § 502(a)(3)."

(breach of fiduciary duty claim) (ECF No. 60, p. 2) The parties also agree that the court may

dispose of this matter based upon the joint stipulation, the attachments thereto, and the memoranda

in support of judgment. (ECF No. 60)[3]

## **Procedural Overview**

Plaintiff's employer, Progress Energy, Inc. ("Progress") established an employee welfare

benefit plan to provide various benefits to employees and their families. The plan is entitled

"Progress Energy, Inc. Life, AD&D and Business Travel Accident Plan" (D002031-45.)   Under the

Plan documents, Progress is the plan sponsor and administrator. (D002035-2037.)   "The Plan

Administrator shall have control of the day-to-day administration of this Plan and the component Plans

. . ." (D002035) The duties of the Plan Administrator include the responsibility "[t]o comply with all

requirements of the law with respect to notice and disclosure" and "[t]o prepare and distribute

information explaining the Plan and the applicable component Plans to Eligible Employees and

---

[2] The Fourth Circuit has interpreted *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) as doing away with the arbitrary and capricious scope of review.  *See de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1186 (4th Cir. 1989) ("The threshold question for reviewing courts is now whether the particular plan at issue vests in its administrators discretion either to settle disputed eligibility questions or to construe 'doubtful' provisions of the plan itself.  If the plan's fiduciaries are indeed entitled to exercise discretion of that sort, reviewing courts may disturb the challenged denial of benefits only upon a showing of procedural or substantive abuse.")

[3] The Fourth Circuit has recognized that the parties to an action for ERISA benefits may agree to waive the summary judgment standard and submit their case to the district court on the merits by way of cross-motions for judgment.  *See Bynum v. Cigna Healthcare of N.C., Inc.*, 287 F.3d 305, 311 n.14 (4th Cir. 2002), *abrogated on other grounds* by *Carden v. Aetna Life Ins. Co*., 559 F.3d 256 (4th Cir. 2009).  However,  breach of fiduciary duty claims are more commonly handled through motions for summary judgment rather than motions for judgment. *See, e.g., Register v. Cameron & Barkley*, 481 F. Supp. 2d 471 (D.S.C. 2007).

Participants."  (§ 3.2; D002036). Prudential is the third-party claims administrator[4] and insurer[5]. (D002041; D000648.) It is undisputed that, as between Progress and Prudential, Progress had the responsibility to provide notice and disclosure regarding the plan.  "The Plans are maintained through separate summary plan descriptions and in some cases insurance and other contracts which taken together are intended to conform to the written plan document and other requirements of the (ERISA)". (D002033).

The Progress Energy, Inc. Life, AD&D and Business Travel Accident Plan has three "component plans", all administered by Prudential Insurance Company.  One of the component plans is the Progress Energy, Inc., Accidental Death and Dismemberment Plan."  (D002041). Prudential has the "[c]omplete discretionary authority to construe and interpret [the Plan] including, without limitation,. . . eligibility to participate in and receive benefits under [the Plan]." (D002036; *see also* D000648.)  In the wrap plan document, Progress as plan sponsor reserved "without limitation the right to amend, modify or change the Plan and/or any Component Plan at any time with or without reason . . ." (D776; *see also* D2037.)

In the fall of 2001, as part of the enrollment process for 2002 benefits, Progress provided its employees a hard copy booklet by mail entitled Total Rewards Progress Energy Benefits Program ("Total Rewards Booklet"). (D000876; D002046-2510). The Total Rewards Booklet contained the 2002 SPDs for the various benefit plans offered by Progress, including the AD&D Plan. (D2298-2323.) As relevant here, the 2002 AD&D SPD provided that coverage will apply if

---

[4] The Plan Administrator may delegate any responsibility regarding the plan. The person to whom a responsibility is delegated is generally responsible only for the performance of that responsibility. (D002037; § 3.4)

[5] *See* Progress Energy, Inc. Group Contract LG-24541-NC. (D000569).

3

the covered party's injuries are "in a covered accident." (D002308.) In addition, the 2002 AD&D SPD contained an exclusion for injuries caused during the "[c]ommission of or attempt to commit a felony". (D002314) The 2002 AD&D SPD contained in the Total Rewards Booklet did not, however, contain a "legally intoxicated" exclusion.[6] Plaintiff claims that she read the 2002 AD&D SPD as found in the Total Rewards Booklet. (D000887.) Plaintiff enrolled her husband, Roger Winburn, in the AD&D Plan, effective January 1, 2002, with a coverage amount of $400,000. Plaintiff stated that the reason she did so was "[b]ecause [he] wouldn't quit drinking and driving and I had three boys around the age of eleven, fifteen, [and] seventeen years old. . . . And if anything were to happen to him, you know, I had three boys to support." (D000876.)

Like the 2002 AD&D SPD, the AD&D SPDs for Plan years 2003-2008 all (1) required the injury at issue to be "accidental" and (2) contained the "felony" exclusion. (D001618-25; D001709-16; D001786-93; D001870-76; D001933-35; D001987-89; D002013-15.) In addition, the 2003-2008 SPDs all contained the "legally intoxicated" exclusion. (D001625; D001716; D001793; D001876; D001934-35; D001988-89; D002014-15.)  The record is not clear as to the exact date when the intoxication exclusion was added.  The remand decision states that the exclusion "appears to have been added in 2003."[7]  (D003031) The AD&D SPDs provide that, in the event of any conflicts between the SPDs and the insurance policy between Progress and Prudential ("Group Policy"), the Group Policy will govern. *(See, e.g.,* D001543.)

---

[6] The 2002 SPD did contain an exclusion for "injury caused by or contributed directly or indirectly by the individual being under the influence of a controlled substance as defined by federal or state law unless administered on the advice of a physician." (D002314)

[7] The record contains a letter from Prudential to the plaintiff's counsel enclosing the "policy provisions regarding the applicable Optional Accidental Death and Dismemberment Coverage (insuring the life of Roger Winburn) that were in effect on January 1, 2002." (D000224). The enclosure contains the intoxication exclusion. (D000269)

The parties stipulated in the Joint Stipulation that the issues before this court are as follows:  1) whether Plaintiff's state law claims are preempted by ERISA; 2) whether Plaintiff's claims are untimely; 3) whether Prudential abused its discretion in denying Plaintiff's claim for accidental death benefits; 4) whether Plaintiff is entitled to assert a breach of fiduciary duty claim under the circumstances of this case; 5) whether Prudential is a proper party to Plaintiff's claims for equitable relief; 6) whether either Defendant committed a breach of fiduciary duty; and 7) whether, under the circumstances of this case, Plaintiff is entitled to a remedy.

Plaintiff has conceded that her state law claims are preempted by ERISA.  (ECF No. 73, p. 2 n. 1)

### Factual Background and Filing of Claim

A.   Plaintiff Submits a Claim for Accidental Death Benefits.

Plaintiff Kimberly B. Winburn ("Plaintiff") is a participant in the Progress Energy, Inc. Life, AD&D and Business Travel Accident Plan sponsored by Progress and insured by Prudential under Group Contract No. LG-24541 (the "Plan").  This case involves Plaintiff's claim for AD&D benefits under the Plan after the death of her husband, Roger Winburn.  Mr. Winburn died in a multi-vehicle accident on May 11, 2008 while operating a motorcycle, during Bike Week in Myrtle Beach, South Carolina.  According to the police report, Mr. Winburn attempted to take a curve too fast on his motorcycle and was forced to lay his bike down, after which it skidded across the road and into two oncoming motorcycles driven by an Anthony Thompson and a Richard Coble.  At the time of the wreck, Winburn had a blood alcohol level of 0.276, more than three times the legal limit of 0.08.  The toxicology report was also positive for opiates. (D 000128) All three motorcyclists were taken to Grand Strand Regional Medical Center.  (D103)

Mr. Winburn was pronounced dead at the hospital as a result of blunt trauma. (*Id.*, D118). The other motorists also suffered injuries. (D103)

Sometime in June of 2008, Plaintiff filed a claim for AD&D benefits. (*See* D000009) On June 12, 2008, Prudential wrote the plaintiff and stated that additional time was needed to evaluate the claim and that the following information was needed: a signed HIPAA form, copy of the autopsy report, copy of the toxicology report, and a copy of the police/accident report.  On July 14, 2008, Prudential again wrote the plaintiff and indicated that it did not yet have a copy of the autopsy or toxicology report but that it would make all requests necessary for the information. On August 13, 2008, September 12, 2008, and October 13, 2008, Prudential wrote the plaintiff indicating that the toxicology report had not been completed by the Horry County Coroner.

B.  Prudential Denies Plaintiff's Claim.

Subsequently, after investigating the claim, Prudential denied the claim by letter dated November 12, 2008, solely on the basis of the legal intoxication exclusion. (D130-32)[8] This exclusion excluded coverage due to an insured "[b]eing legally intoxicated or under the influence of any narcotic unless administered or consumed on the advice of a Doctor." (D 000187) The denial letter informed the plaintiff of her right to appeal to the Appeals Coordinator within the Plan and indicated that the plaintiff could file a lawsuit for policy benefits after completion of the first level of appeal.  The letter does not state any deadline for the initiation of a lawsuit.  The record does not indicate when the plaintiff received the denial letter.

---

[8] The letter also recites as a requirement for coverage that the person "sustains an accidental injury while a Covered Person."  However, Prudential did not find or state as a basis for denial that Mr. Winburn's death did not result from an accident.  The sole basis for the denial was the legal intoxication exclusion.

C.  <u>Plaintiff Appeals the Denial Within the Plan</u>.

By letter dated May 29, 2009, Plaintiff (through counsel) appealed the denial of benefits, claiming that the legal intoxication exclusion did not exist at the time of Mr. Winburn's death because it was not contained in the Total Rewards booklet and the plaintiff was never notified of the addition of the exclusion to the policy. (D141-42) Prudential responded by letter dated June 8, 2009 in which it provided a copy of the Group Policy that was allegedly in effect on May 11, 2008 (the date of Mr. Winburn's death) and requested Plaintiff to provide any supplemental information in support of her appeal within 60 days.  The record contains an internal email from a Jill Vivian of the Group Life Claims Division of Prudential to an Allyson Kambach, also of Prudential, conveying Plaintiff's counsel's request for a copy of all policy provisions that were in effect on January 1, 2002, when the plaintiff first obtained the coverage, and the effective date of and a copy of any changes to the policy that came into existence after January 1, 2002. (D 000216) By letter dated July 10, 2009 (D000224), Prudential forwarded Plaintiff's counsel the policy booklet allegedly in effect on January 1, 2002; a copy of changes to the policy after January 1, 2002; and a copy of the accident report.  The Court has reviewed the attachments to the letter and each policy booklet attached to the letter contains the legal intoxication exclusion. The letter directed counsel to Progress for information concerning communication of the changes to the insured.

By letter dated August 11, 2009, Plaintiff's counsel referenced the 400+ page "Total Rewards" booklet, in which a 24 page section described and certified AD&D coverage for employees and dependents.  He also referenced the Certificate of Insurance, page 3, which stated: "Participants become covered by the (AD&D) Plan as described in this booklet.  This booklet

constitutes the participant's Certificate of Coverage while covered under the (AD&D) Plan."  He also asserted that the AD&D section of the "TotalRewards" booklet delivered to Ms. Winburn in the fall of 2001 certified AD&D coverage beginning January 1, 2002 and expressly listed 9 exclusions but did not include a legal intoxication exclusion.   Counsel noted that the policy booklets provided by Prudential revealed that Prudential "held out one set of exclusions in the certified disclosures it delivered to Mrs. Winburn in the fall of 2001 for coverage year 2002, while now claiming to have maintained a materially more restrictive, but undisclosed, exclusion which it now relies on to deny coverage." (D 000448) Counsel also attached the ProgressLife newsletter sent to employees in the fall of 2005 regarding annual benefit enrollment for 2006 which summarizes some changes to medical plans but states that the other benefit plans are not changing. (D 000456) Exhibit 6 to counsel's letter was a letter dated July 21, 2008 (after Mr. Winburn's death in May of 2008) from Progress to employees enclosing a CD-Rom of the 2008 benefits booklets, formerly referred to as Summary Plan Descriptions, and states: "The SPDs have been updated to incorporate changes that were communicated during previous benefit enrollments and through the annual distribution of the Summary of Material Modifications." (D 000461)

By letter dated October 15, 2009, Prudential notified counsel for the plaintiff that the decision to deny the claim was being upheld.  (D 000560) Prudential indicated that it contacted Progress and learned that the SPDs are updated annually; employees are notified each year when the SPDs have been published and are available on the company's intranet; hard copies are available by request; Progress Energy is not legally required to physically send the SPD's to employees each year; and the 2007 SPD contained the legally intoxication exclusion. The letter also stated that the 2005 and 2006 SPDs contained the exclusion.  The letter again denied the

claim solely on the basis of the legal intoxication exclusion and notified Plaintiff that she could file a second level appeal or file a lawsuit. The deadline for the administrative appeal was provided, but no deadline was given for a lawsuit.

D.  Plaintiff Files an Action in State Court which was Removed to this Court.

Plaintiff initiated an action in the Darlington County Court of Common Pleas on November 18, 2011, alleging a claim for a declaratory judgment that the defendants breached their legal and contractual duties to the plaintiff by failing to notify her of changes made to the policy exclusions and that the defendants are liable for the full AD&D coverage on her husband.  She further alleged claims for breach of contract and specific performance/equitable payment of benefits.  The case was removed to this Court on December 28, 2011 on the basis of diversity of citizenship and federal question jurisdiction on the basis of ERISA.  Both defendants filed Answers.  Defendant Progress asserted as affirmative defenses the doctrine of waiver and estoppel and the statute of limitations and also asserted that any benefits due are subject to offset, integration or other deductions in accordance with the plan terms.  Defendant Prudential's Answer did not assert affirmative defenses but did assert that any benefits due under the plan are subject to offset, integration or other deductions in accordance with the plan terms.  Prudential's Answer also alleged failure to comply with the terms of the plan.  Plaintiff filed an amended complaint on June 4, 2012, adding a claim for benefits under ERISA Section 502(a)(1)(B) and a claim for "appropriate equitable relief" under ERISA Section 502(a)(3).  The defendants filed Answers to the Amended Complaint alleging the same or similar affirmative defenses described above.

E.  <u>Court Grants Plaintiff's Motion to Supplement the Record</u>.

On October 4, 2012, Plaintiff filed a motion to supplement the record with her affidavit and to permit her to serve requests to admit on the defendants. The grounds for the motion were that she seeks equitable remedies under Secton 1132(a)(3) pursuant to *CIGNA Corp. v. Amara*, ____ U.S. ____, 131 S. Ct. 1866 (2011) and *McCravy v. Metropolitan Life Ins. Co*., 690 F.3d 176 (4th Cir. 2012). This Court issued an order on July 25, 2013 granting the motion to supplement the record. In the order, the Court granted the plaintiff's discovery requests and also allowed a deposition of the plaintiff at the defendant's request. The order provided:

> After conclusion of discovery, the case shall be remanded back to the plan administrator for consideration of the effect, if any, of the new evidence resulting from this discovery on the administrator's decision as to the terms of the plan which governs this claim and as to the merits of the claim.

(ECF No. 41, p. 8)

F.  <u>Court Remands the Case to the Administrator</u>.

After completion of the discovery, this Court signed a Consent Order of Remand on October 30, 2013. The case was remanded to the claims administrator, Prudential, to consider the plaintiff's claim in light of the new evidence.

G.  <u>Administrator Again Denies the Claim</u>.

On remand, Prudential issued a decision on December 30, 2013 upholding its decision to deny the claim. However, in addition to denying the claim on the original ground of the legal intoxication exclusion, Prudential denied it on two additional grounds, neither of which had been previously argued or raised by any defendant at any time. These two grounds consisted of Prudential denying the claim on the basis that Mr. Winburn did not sustain an accidental death

and that, even if the death was accidental, recovery was also barred by the felony exclusion. (D 003029)

H.  The case is now Briefed and Ready for Disposition.

The parties have now filed their Joint Stipulation with this Court.  Progress and the plaintiff have filed cross-motions for summary judgment. (ECF Nos. 61 and 64, respectively) Prudential has filed a motion for judgment. (ECF No. 63) The issues have been fully briefed, and the case is ripe for decision.

**The Policy Terms**

The test for payment of accidental death benefits is:

Benefits for accidental Loss are payable only if all of these conditions are met:
(1) The person sustains an accidental bodily Injury while a Covered Person.
(2) The Loss results directly from that Injury and from no other cause.
(3) The person suffers the Loss within 365 days after the accident.

(D625.)

The relevant exclusions for accidental death coverage are:

A Loss is not covered if it results from any of these:
. . .
(8) Commission of or attempt to commit an assault or a felony.
. . .
(10) Being legally intoxicated or under the influence of any narcotic
      unless administered or consumed on the advice of a Doctor.

(D626-27.)

The Contractual limitations period is:

**Proof of Loss**: Prudential must be given written proof of the loss for which claim is made under the Coverage. . . . It must be furnished within 90 days after the date of the loss.
. . .

11

**Legal Action**: No action at law or equity shall be brought to recover on the Group Contract until 60 days after the written proof described above is furnished. No such action shall be brought more than three years after the end of the time within which proof of loss is required.

(D643.)

## Summary Judgment Standard[9]

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Once the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992).

---

[9] *See* Note 3, *infra*. The summary judgment standard is appropriate for breach of fiduciary duty claims.

The nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory allegations to defeat a motion for summary judgment. *See Baber*, 977 F.2d at 875. Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

**I.     Breach of Fiduciary Duty Claim, 29 U.S.C. § 1132(a)(3)**

**A.  Statute of Limitations**. Defendant Progress (the plan administrator) has moved for summary judgment on the affirmative defense of the statute of limitations. Defendant Prudential (the claims administrator) has moved for final judgment on this basis also.[10]

The statute of limitations for a breach of fiduciary duty claim is set forth in ERISA Section 413, 29 U.S.C. § 1113. The statute provides:

> **No action may be commenced** under this subchapter **with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part**, or with respect to a violation of this part, **after the earlier of**--
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> (2) **three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;**
> except in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation. (Emphasis added)

"Thus, section 413 'creates a general six year statute of limitations, shortened to three years in cases where the plaintiff has actual knowledge, and potentially extended to six years from the date of discovery in cases involving fraud or concealment.'" *Browning v. Tiger's Eye Benefits*

---

[10] Prudential did not assert any affirmative defenses in its Answer.

*Consulting*, 313 Fed. App'x 656, 660 (4th Cir. 2009) (citing *Kurz v. Phila. Elec. Co.*, 96 F.3d

1544, 1551 (3rd Cir. 1996)). The basis of the plaintiff Ms. Winburn's breach of fiduciary duty

claim in the case at bar is the failure to adequately inform her of the addition of a legal

intoxication exclusion to the plan.[11]   Here, there is no evidence of fraud or concealment relating

to notification of the intoxication exclusion that would invoke the six-year statute of limitations.

Plaintiff does not attempt to invoke the six-year statute of limitations.  *See Barker v. Am. Mobil*

---

[11] In ERISA, Congress set out to protect . . . participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.  29 U.S.C. § 1001(b).  "ERISA provides specific disclosure requirements in 29 U.S.C. § 1022(a)(1) which require plan participants and beneficiaries to be apprised of any 'material modification in the terms of the plan.'  *See also* 29 U.S.C. § 1024(b)(1).  Likewise, the broad fiduciary duties imposed on plan trustees are to be exercised 'solely in the interest of the participants and beneficiaries.' 29 U.S.C.  § 1104.  Courts have interpreted these provisions to require notice to plan participants of changes in a plan's provisions and an opportunity after such notice for the  participant to take action . . . 'Congress promulgated the fiduciary duty and other provisions of ERISA, . . . to ensure that plan participants would receive *effective* notice of any plan changes that might affect their pension rights . . .' *[Kaszuk v. Bakery and Confectionery Union*, 638 F.Supp. 365, 371 (N.D.Ill. 1984)] (emphasis in original);  H.R.Rep. 533, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S. Code Congr. & Admin. News 4639, 4646.  Application of an overriding fiduciary standard of fairness was Congress' goal because it was 'grossly unfair to hold an employee accountable for acts which disqualify him from benefits, if he had no knowledge of these acts. . ."  *Rodriguez v. MEBA Pension Trust*, 872 F.2d 69, 73-74 (4th Cir. 1989).  ERISA Section 1024(b) requires the plan administrator to furnish each participant with a copy of the summary plan description and all modifications referred to in Section 1022(a)(1).  "If there is a modification or change described in section 1022(a) of this title . . . a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant . . ."  29 U.S.C. Section 1024(b)(B). The regulations provide: "The summary of material modifications to the plan or changes in information required to be included in the summary plan description need not be furnished separately if the changes or modifications are described in a timely summary plan description."  29 C.F.R. Section 2520.104b-3.  Section 1022(a) requires that a "summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024(b)(1) of this title."  Section 1022(b) requires an SPD to contain, *inter alia,* "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."  Where changes are provided electronically, notice must be provided that "apprises the individual of the significance of the document when it is not otherwise reasonably evident as transmitted." 29 C.F.R. § 2520.104b-1(c)(iii).   "Whether a particular change to an ERISA plan constitutes a 'material modification' depends on the nature of the modification.  The courts have recognized that Congress, in enacting ERISA's notice provisions, was largely concerned with whether plan participants had sufficient notice of provisions that qualified them for (or disqualified them from) benefits. It follows that material modifications include, among other things, amendment provisions that establish new benefits, take away existing benefits, narrow or expand the circumstances under which benefits are paid, and terminate the plan entirely. If the amendment changes the information required to be disclosed in an SPD, an SMM should be distributed." ERISA Compliance Manual, Page 638 (West Publishing 4th Quarter 2013 Ed.)

*Power Corp.,* 64 F.3d 1397, 1402 (9th Cir. 1995) (holding that the six-year limitation period only applies "when the defendant himself has taken steps to hide his breach of fiduciary duty"); *See also, Larson v. Northrup Corp.,* 21 F.3d 1164, 1172-73 (D.C. Cir. 1994); *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.,* 919 F.2d 1216, 1220 (7th Cir. 1990); *Schaefer v. Arkansas Medical Soc'y,* 853 F.2d 1487, 1491 (8th Cir. 1988).

Under ERISA's three-year limitations provision, plaintiffs must bring their claims within three years of the date they acquire "actual knowledge" of the breach or violation. 29 U.S.C. § 1113. In *Browning*, an unpublished decision by the Fourth Circuit, the court noted that Congress amended the statute in 1987 to remove a provision that the three-year limitation period began when a plaintiff had constructive knowledge of the breach.  After the amendment, a plaintiff must have actual and not simply constructive knowledge of the breach of fiduciary duty to trigger the statute of limitations.  However, the court did not "settle on a hard and fast definition" of the term "actual knowledge".  *Id*. at 661.  The court reviewed the approaches by other circuits and noted that the Third and Fifth Circuits interpret the term "actual knowledge" narrowly to require a two-prong test, knowledge of both the "events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA." *Browning* at *4 (citing *Int'l Union v. Murata Erie N. Am., Inc.*., 980 F.2d 889, 900 (3rd Cir. 1992); *Maher v. Strachan Shipping Co*., 68 F.3d 951, 954 (5th Cir. 1995)).  The court contrasted this approach with that of the Sixth, Seventh, Ninth, and Eleventh Circuits, which require only that the plaintiff have "knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute."

*Id*. (citing *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003)).  The court found that the other circuits have "settled on a definition fall(ing) somewhere between these two views."  *Id*.  The Fourth Circuit then found that "[t]he point in which one has 'actual knowledge of the breach or violation,' as opposed to constructive knowledge, in turn depends largely on the 'complexity of the underlying factual transaction, the complexity of the legal claim[,] and the egregiousness of the alleged violation." *Id*. (citing *Martin v. Consultants & Adm'rs, Inc*., 966 F.2d 1078, 1086 (7th Cir. 1992)).  The Fourth Circuit also agreed with the First Circuit that "'[t]he amendment to ERISA § 413 means that knowledge of *facts* cannot be attributed to plaintiffs who have no actual knowledge of them', and that 'there cannot be actual knowledge of a violation for purposes of the limitation period unless a plaintiff knows 'the essential facts of the transaction or conduct constituting the violation.'" *Id*. (citing *Edes v. Verizon Commc'ns, Inc*., 417 F.3d 133, 142 (1st Cir. 2005)).  Other than the above discussion in the unpublished decision in *Browning*, the Fourth Circuit has not defined "actual knowledge" for purposes of this ERISA statute of limitations other than to say that it "begins to run when a plaintiff has knowledge of the alleged breach of a responsibility, duty, or obligation by a fiduciary." *Shofer v. Hack Co*., 970 F.2d 1316, 1318 (4th Cir. 1992) ("For claims alleging a breach of fiduciary duty, ERISA provides a three-year statute of limitations.").

The Court now turns to determining when the plaintiff Winburn had actual knowledge of the essential facts of the transaction or conduct constituting the alleged ERISA violation, that is, when Ms. Winburn knew the essential facts concerning the alleged failure of Progress to inform her of the addition of the intoxication exclusion to the plan.  Defendants contend that Winburn had actual knowledge of the essential facts regarding the breach when she received from Progress

16

by mail in July of 2008 a CD containing the 2008 AD&D summary plan description which included the intoxication exclusion.  (ECF No. 64-2, p. 1)  In the alternative, they contend that Plaintiff obtained actual knowledge of the essential facts of her breach of fiduciary duty claim when she received Prudential's initial letter dated November 12, 2008 denying her claim for benefits.[12]  Plaintiff contends that she did not receive notice of the essential facts until she met with her attorney in 2009.  Plaintiff also contends that the three-year statute of limitations does not apply because it conflicts with a six-year limitations period contained in the 2001 total rewards booklet and that she was never notified that this limitations period had been changed.[13]

The Court finds that the mailing of the CD containing the exclusion to the plaintiff in July of 2008 provided the plaintiff with actual knowledge of the essential facts of the transaction or conduct constituting the violation. The CD was sent to her in July, just two months after her husband's death in May of 2008, and after she had already filed a claim for benefits.  Plaintiff's affidavit reflects that she received the CD and cover letter dated July 21, 2008 in July of 2008. (ECF No. 29-1, ¶ 18) The cover letter dated July 21, 2008 which was sent with the CD stated: "The SPDs have been updated to incorporate changes that were communicated during previous benefit enrollments and through the annual distribution of the Summary of Material

---

[12] Defendants also contend that by operation of Fed. R. Civ. P. 6(d), adding three days to a deadline after a document is mailed, the plaintiff is deemed to have received the letter on November 15, 2008.  *See also Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 148 n. 1 (1984).  Since November 15, 2008 was a Saturday, then under the defendants' argument, the statute of limitations would have expired on Monday, November 17, 2011.  The lawsuit was filed in state court on November 18, 2011 and removed to this court on December 28, 2011.

[13] Plaintiff also argues that her § 502(a)(3) claim (i.e., breach of fiduciary duty claim) did not begin to accrue until the administrative process with Prudential concluded in 2009. (Pl's Resp. at 27 n.3.) Section 502(a)(3) claims, however, do not have an exhaustion requirement, unless they are § 502(a)(1)(B) claims dressed up as § 502(a)(3) claims. *See Smith v. Sydnor*, 184 F.3d 356, 364-65 (4th Cir. 1999). Here, Plaintiff's § 502(a)(3) claim, which complains about Progress's alleged failure to notify her of a material modification, i.e., the intoxication exclusion, would not have been subject to this exhaustion requirement. Thus, Plaintiff's § 502(a)(3) claim accrued without respect to the administrative process.

Modifications."  The letter lists the plans for which information was included and specifically lists the Accidental Death and Dismemberment Plan.  The plaintiff admitted that she received the cover letter and CD by inter-office mail. (D000938).  She does not testify that she did not open the CD and review its contents.  On the contrary, she states in her affidavit:

> PE's July 21, 2008 CD contained a significant change in the AD&D exclusions from those listed in the 2002 "**totalrewards**" hard copy book that PE gave me in the fall of 2001.  One of these exclusions stated as follows: A loss is not covered if it results from any of these (10) Being legally intoxicated or under the influence of any narcotic unless administered or consumed on the advice of a Doctor.

(ECF No. 29-1, p. 5, ¶ 19).

She further states in Paragraph 20 of her affidavit: "PE's July 21, 2008 CD was the first notice I ever received from PE that the AD&D coverage exclusions had been changed from the terms and exclusions contained within the 2002 'totalrewards' hard copy book PE had distributed to me in the fall of 2001."

In her deposition, she testified in response to questions from her attorney:

> Q. [T]o the best of your knowledge and belief when is the next time you received specific information concerning the specific coverages that you had, including exclusions, on the AD&D coverage after you got this January 1, 2002 book (the Total Rewards book)?
> A.  It was when I received this CD right here in the mail.  It was mailed to employees and I think it's dated —actually dated July but I've got written on it June of 2008. . .  And that was mailed to . . . I was going to say it was mailed to our homes but it looks like it was mailed through our interoffice mail.
> Q.  Okay.  This is actually the cover of the Progress Energy CD you got and you say you got that in July of 2008, is that correct?
> A.  Correct.

(D000937-938).

Plaintiff asserts that she did not have actual knowledge of the alleged breach of fiduciary duty until 2009, when she spoke with her attorney.  This argument lacks merit. The Fourth Circuit in *Browning* found that the plaintiffs "had <u>actual knowledge of enough sufficient facts relied upon</u>

18

in their legal claims to trigger the three-year limitations period." 313 Fed. App'x 656 at *5. Here, at the time that Plaintiff made the decision to purchase accidental death benefits, the booklet which she was provided did not contain an intoxication exclusion. She admits that she received the CD in July of 2008 and that the CD contained a significant change, i.e., the intoxication exclusion. At that time, she knew that she had already made a claim on her husband's death and that he had died in an alcohol-related motorcycle accident. She also knew the harmful consequences that a legal intoxication exclusion would have on her claim. Therefore, in July of 2008, the plaintiff had the requisite actual knowledge of sufficient facts relied upon in her breach of fiduciary duty claim to trigger the three-year limitations period. As noted by the First Circuit, Congress did not intend for the actual knowledge requirement to be used to "excuse willful blindness by a plaintiff." *Edes v. Verizon Communic'ns, Inc.*, 417 F.3d 133 (1st Cir. 2005), cited with approval by *Browning*, 313 Fed. App'x at *4.[14]

In an argument which appears to be a request for equitable tolling of the statute of limitations or equitable estoppel to assert it, Plaintiff relies on a six-year time period for "Legal action" contained in the Total Rewards book distributed to her in 2001[15], which states:

> No legal action may be brought to recover on the policy within 60 days after written proof of loss has been given. No such action may be brought after three years (six years in South Carolina) from the time written proof of loss must be given. (D002316)

---

[14] By federal statute, ERISA breach of fiduciary duty claims are within the exclusive jurisdiction of federal courts. 29 U.S.C. § 1132(e)(1). (State courts have concurrent jurisdiction over claims for benefits.) Therefore, the commencement of an action in state court for breach of fiduciary duty does not toll the statute of limitations. *Shofer v. Hack Co.*, 970 F.2d 1316 (4th Cir. 1992). For statute of limitations purposes, the case would be considered filed, at best, on the date of removal to this court, December 28, 2011.

[15] The SPDs from 2003-2006 contain the same wording. (1611, 1702, 1779, and 1863) The 2007 SPD does not contain the section on "Legal Action." (D1925) Nor does the 2008 SPD. (D 1979)

19

Section 502(a)(1)(B) creates a claim "to recover benefits. . . under the terms of (the) plan." In contrast, a breach of fiduciary duty claim seeks to obtain "other appropriate equitable relief" as opposed to recovering on the policy. A careful review of the context of the above language in the 2002 SPD shows that it applies only to claims for benefits and not to "other appropriate equitable relief" (i.e., a Section 502(a)(3) breach of fiduciary duty claim). The provision appears on a page entitled "Claim and Appeal Procedures." The first paragraph refers to filing a claim with "the insurance company." The section after the one entitled "Legal action" refers to "Prudential" notifying a claimant of the claim administration. Claims for benefits are made against the claims administrator (Prudential). A claim for breach of fiduciary duty is against Progress, the plan administrator. Accordingly, the "Legal action" paragraph is in contemplation of a claim for benefits rather than for equitable relief.

Regardless, the Court finds that (even if the above provision did apply to breach of fiduciary duty claims) it would not toll the statute of limitations or justify application of equitable estoppel.

The Supreme Court has noted that "[F]ederal courts have typically extended equitable relief only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). "Equitable exceptions to the statutory limitations period should be sparingly applied . . . The certainty and repose these provisions confer will be lost if their application is up for grabs in every case." *English v. Pabst Brewing Co*., 828 F.2d 1047, 1049 (4th Cir. 1987). Equitable tolling and equitable estoppel are both "based primarily on the view that a defendant should not be permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time." *Id*. "Equitable tolling applies where the defendant has wrongfully deceived or

misled the plaintiff in order to conceal the existence of a cause of action. . . . To invoke equitable tolling, the plaintiff must therefore show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely (lawsuit)." *Id.* Equitable tolling is applied only in rare circumstances, which must be "guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). "Equitable estoppel applies where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline. . . 'The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in timely fashion is the consequence either of a deliberate design . . . or of action that the (defendant) should unmistakably have understood would cause the employee to delay filing his (complaint)'." *English*, 828 F.2d at 1049. "The element common to both doctrines is some form of misconduct by the defendant." *Lekas v. United Airlines, Inc.,* 282 F.3d 296 (4th Cir. 2002).

The parties do not cite and the court has not found any cases in which the federal statute of limitations for breach of fiduciary duty, 29 U.S.C. § 1113, has been tolled (other than for fraud or concealment as provided in the statute). Defendant Prudential does cite *Heimeshoff v. Hartford Life & Acc.*, ___ U.S. ___, 134 S. Ct. 604 (2013) in support of its argument that the contractual limitation contained in the plan in this case of "three years after the end of the time within which proof of loss is required" applies to bar the lawsuit entirely. (D643) Prudential contends that Plaintiff's husband died on May 11, 2008; proof of loss was thus due on August 9, 2008 (90 days after the date of loss); the statute of limitations ran on August 9, 2011; and the lawsuit was filed in state court more than three years later on November 18, 2011 and removed on December 28,

21

2011.  In *Heimeshoff*, the Supreme Court in a case concerning a claim for benefits held that, "[a]bsent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable."  134 S.Ct. at 610. The court recognized that ERISA does not contain a statute of limitations for benefits claims and that accordingly the comparable state statute of limitations applies.  The court looked to precedent concerning whether to enforce the terms of a contractual limitations provision and cited *Order of Untied Commercial Travelers of America v.Wolfe*, 331 U.S. 586, 608 (1947) as follows:

> [I]n the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period.

The court also refers to situations where federal statutes of limitations specifically declare unlawful limitations shorter than the statute.  *See e.g., La. & Western R. Co. v. Gardiner*, 273 U.S. 280, 284 (1927).  Additionally, the court recognizes that some statutes of limitations provide only a default rule that permits parties to choose a shorter limitations period.  *See, e.g., Riddlesbarger v. Hartford Ins. Co*., 74 U.S. 386, 390 (1869).  Finally, the court refers to the argument that ERISA is a "controlling statute to the contrary."  However, the court states: "But they do not contend that ERISA's statute of limitations for claims of breach of fiduciary duty controls this action to recover benefits. *See* 29 U.S.C. § 1113."  134 S.Ct. at 613.  Therefore, the Supreme Court specifically distinguished Section 1113 (the breach of fiduciary duty statute of limitations) from its holding that, where the statute creating the cause of action is silent regarding a statute of limitations, the plan could provide a time limit.  *See also, De Conninck v. Provident Life and*

*Accident Ins. Co.*, 747 F. Supp. 627 (D. Kansas 1990) (Court found that the policy could not provide the starting point for the statute of limitations where the ERISA breach of fiduciary duty statute of limitations had been established by Congress). *See also*, *Cherochak v. Unum Life Ins. Co. of Am.*, 586 F. Supp. 2d 522, 530 (D.S.C. 2008) ("This court concludes that § 1113 applies to all claims for a breach of fiduciary duty pursuant to ERISA"); *Schrader v. Trucking Emps. of N. Jersey Welfare Fund, Inc.,* 232 F. Supp. 2d 560, 568 n.10 (M.D.N.C. 2002) ("To the extent that the Court has determined that this action is properly described as a claim for breach of fiduciary duty, the Court notes that Congress has codified, as part of ERISA, a statute of limitations for breach of fiduciary duty claims. *See* 29 U.S.C. § 1113."); *United Food & Commercial Workers Local 204 v. Harris-Teeter Super Mkts., Inc.,* 716 F. Supp. 1551, 1560 (W.D.N.C. 1989) ("Section 1113 of Title 29, United States Code, provides a three-year statute of limitations for actions against fiduciaries for breach of fiduciary responsibility."); *Trace v. Ret. Plan for the Salaried Emps. of Merck & Co.*, 419 F. Supp. 2d 846, 848 (E.D. Va. 2006) ("For claims alleging a breach of fiduciary duty, ERISA provides a three-year statute of limitations.").

"The basic question to be answered in determining whether, under a given set of facts, a statute of limitations is to be tolled, is one 'of legislative intent whether the right shall be enforceable . . . after the prescribed time.' . . . In order to determine congressional intent, we must examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the rights given by the Act." *Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 426-27 (1965). It is important to note that the ERISA statute of limitations in Section 1113 for breach of fiduciary duty claims specifically includes a tolling provision in cases of fraud or concealment. If Congress had intended to allow tolling in other

23

circumstances, it could have done so.  *See United States v. Beggerly*, 524 U.S. 38, 48 (1998)("Equitable tolling is not permissible where it is inconsistent with the text of the relevant statute. . . Here, the QTA, by providing that the statute of limitations will not begin to run until the plaintiff 'knew or should have known of the claim of the United States,' has already effectively allowed for equitable tolling.") Therefore, equitable tolling does not apply.

The arguments for equitable tolling and equitable estoppel as well as the law overlap. Equitable estoppel does not apply here.  There is no evidence that the defendants engaged in intentional misconduct to cause Ms. Winburn to miss the filing deadline.  Even if Plaintiff was able to show that she relied on the limitations period in the Total Rewards book in delaying the filing of the lawsuit, such reliance would not have been reasonable.  Plaintiff admitted that she received the 2008 SPD in July of 2008 and that it contained no six-year limitations period. (Pl.'s Resp. at 29) Therefore, after she received the 2008 SPD, she could not have reasonably relied on the 2002 SPD to alter the breach of fiduciary duty statute of limitations set forth in the statute. Defendants also argue that the 2001 Total Rewards book and the SPDs state that "[i]f there are inconsistencies between this booklet and the insurance contract, the terms and conditions of the contract will govern."  The company mailed the 2008 SPD to Plaintiff in July of 2008, before her time to bring suit expired.  It would not be reasonable for the plaintiff to continue to rely on the 2001 Total Rewards book after Progress mailed her the 2008 SPD. She had also consulted an attorney by 2009.[16]

---

[16] In *Cigna Corp. v. Amara*, __U.S. __, 131 S. Ct. 1866 (2011), the Supreme Court clarified and "expanded the relief and remedies available to plaintiffs asserting breach of fiduciary duty under [Section 1132(a)(3)] and therefore seeking make-whole relief such as equitable relief in the form of 'surcharge.'" *McCravy v. Metropolitan Life Ins. Co*., 690 F.3d 176, 180 (4th Cir. 2012) citing Lee T. Polk, *Statutory Provisions-Civil Remedies*, 1 ERISA Practice and Litigation § 5:4 (West 2012)).

On the basis of the above discussion, the Court finds that the plaintiff had actual knowledge of the essential facts constituting the breach of fiduciary duty in July of 2008; that the express three-year statute of limitations in Section 1113 should not be equitably tolled and the defendants were not equitably estopped to assert the three-year statute of limitations; and the lawsuit was not timely filed. Therefore, the Progress motion for summary judgment on the breach of fiduciary duty claim on grounds of the statute of limitations is granted. While Prudential did not raise the statute of limitations as an affirmative defense, it is entitled to judgment on other grounds as set forth below.

**Additional Grounds in Motion for Judgment by Prudential**

Prudential also moves for judgment pursuant to Fed. R. Civ. P. 52(a) on the basis that Plaintiff's claim for equitable relief fails to allege an actionable violation of ERISA against Prudential, that Prudential was not responsible for communicating with plan participants about plan terms, and that the claim for benefits fails under the arbitrary and capricious scope of review.

"ERISA allocates to the plan administrator the responsibility for providing notice of plan provisions and changes that affect the benefits of all." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 62 (4th Cir. 1992); *see also* 29 U.S.C. § 1024(b)(1). Here, Progress Energy is designated as the Plan Administrator throughout the plan documents. (*E.g.,* D761, D766, D1564, D2034, D2035.) Further, the plan documents specifically designate Progress Energy with the responsibility "[t]o comply with all requirements of the law with respect to notice and disclosure" and "[t]o prepare and distribute information explaining the Plan and the applicable Component Plans . . ." (D767; *see also* D2036.) Thus, even if there was a failure to provide any required notice, Prudential is not the Plan Administrator and cannot be held liable for such failure. *See also*

25

*Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (a claim for breach of fiduciary duty may lie only where the defendant "was acting as a fiduciary . . . when taking the action subject to the complaint").

Indeed, Plaintiff admits that she did not recall receiving anything at all from Prudential prior to Mr. Winburn's death. (D879.) Plaintiff also stated that she did not recall Prudential saying anything before Mr. Winburn's death that was not true. (D909.) Instead, Plaintiff admits that her only basis for liability against Prudential is that it provides the insurance coverage. (*Id.*) This is an insufficient basis for liability under ERISA § 502(a)(3) for breach of fiduciary duty. *See Coleman*, 969 F.2d at 62 ("While it is true that an insurer will usually have administrative responsibilities with respect to the review of claims under the policy, that does not give this court license to ignore the statute's definition of plan administrator and to impose on Nationwide the plan administrator's notification duties."). Therefore, the court grants Prudential's motion for judgment as to the breach of fiduciary duty claim on the basis that, as claims administrator and not plan administrator, it would have no liability for breach of fiduciary duty.

## II.  Plaintiff's Claim for Benefits

Defendant Progress has moved for summary judgment on the benefits claim, and Defendant Prudential has moved for final judgment on the benefits claim.  The court first finds that Progress is not a proper defendant under the Section 502(a)(1)(B) claim for benefits.  As the administrative record in this case bears out, Prudential, not Progress, administered claims under the Plan. Thus, Progress is not a proper defendant under § 502(a)(1)(B). *See Gluth v. Wal-Mart Stores, Inc.*, No. 96-1307, 1997 WL 368626, at *6 (4th Cir. July 3, 1997) (holding that funding entity with no authority over claims administration was not proper defendant under § 502(a)(1)(B)); *Williams v.*

26

*Unum Life Ins. Co. of Am.*, 250 F. Supp. 2d 641, 645 (E.D. Va. 2003) (granting summary judgment to employer on § 502(a)(1)(B) claim because insurer administered claims under the plan).   Therefore, the motion for summary judgment by Progress is granted as to the benefits claim.   As Prudential is the proper defendant on the plaintiff's claim for benefits, the Court will now proceed to analyze the merits of that claim.[17]

### Scope of Review for the Claim for Benefits

Where an ERISA plan confers upon its administrator discretionary authority in the exercise of its power, the administrator's denial of benefits is reviewed under an abuse-of-discretion standard. *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan,* 201 F.3d 335, 341 (4th Cir. 2000). Such a discretionary decision "will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111 (1989)). The administrator's decision is reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence," *Bernstein v. CapitalCare, Inc.,* 70 F.3d 783, 787 (4th Cir. 1995), which is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *English v. Shalala,* 10 F.3d 1080, 1084 (4th Cir. 1993) (citation omitted). In weighing the reasonableness of the plan administrator's determination, the Court may consider, but is not limited to, the following factors:

> (1) the language of the Plan; (2) the purposes and goals of the Plan;
> (3) the adequacy of the materials considered to make the decision
> and the degree to which they support it; (4) whether the fiduciary's
> interpretation was consistent with other provisions in the Plan and

---

[17] Prudential also argues under *Heimeshoff* that the contractual limitation contained in the plan of "three years after the end of the time within which proof of loss is required" bars the claim for benefits.  Plaintiff asserts that the applicable contractual limitation should be six years as provided in the 2001 Total Rewards book.  However, even assuming that the applicable contractual limitation was six rather than three years, the claim for benefits fails on the merits as set forth hereinbelow.

> with earlier interpretations of the Plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest.

*Booth,* 201 F.3d at 342-43; *Champion v. Black & Decker (U.S.) Inc.,* 550 F.3d 353, 359 (4th Cir. 2008); *Williams v. Metropolitan Life Ins. Co.,* 609 F.3d 622, 630 (4th Cir. 2010).

In *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105 (2008), the Supreme Court held that an insurance company, which served as both administrator with discretionary authority to determine claims and insurer with responsibility of paying the claims, functioned under a conflict of interest. Such a conflict of interest, however, does not change the standard of review in ERISA cases. Rather, "when reviewing an ERISA plan administrator's discretionary determination, a court must review the determination for abuse of discretion and, in doing so, take the conflict of interest into account only as 'one factor among many' that is relevant in deciding whether the administrator abused its discretion." *Champion,* 550 F.3d at 358 (quoting *Glenn,* 554 U.S. at 116). In the case at bar, the plan administrator (Progress Energy) and the claims administrator (Prudential) are separate entities, so no conflict of interest exists.

A. As to the claim for benefits, the court must apply an abuse of discretion standard.

The Plan documents confer on Prudential "[c]omplete discretionary authority to construe and interpret [the Plan]" and to determine "eligibility to participate in and receive benefits under [the Plan]." (D002036; *see also* D000748.)

B. Prudential's Decision to Deny the Claim on the Basis of the Legal Intoxication Exclusion was Reasonable, and Plaintiff Received a Full and Fair Review.

28

Prudential concluded that the "legally intoxicated" exclusion barred Plaintiff's claim. (D003031.) This conclusion was not an abuse of discretion. At the time of Mr. Winburn's death in 2008, the terms of the AD&D Plan then in effect contained the "legally intoxicated" exclusion. Plaintiff has never contended that the "legally intoxicated" exclusion would not bar recovery if it were part of the AD&D Plan. Even if Plaintiff had made such an argument, it would obviously fail based on the evidence in the record which includes the evidence of Mr. Winburn's blood alcohol level and the accident report. Prudential did not abuse its discretion in concluding that Mr. Winburn's death was caused by his "legal intoxicat[ion]." Thus, Plaintiff's § 502(a)(1)(B) claim fails.

Defendants also contend that the administrator properly exercised its discretion in interpreting the plan to find that the death of the plaintiff's husband did not result from an accident and that the felony exclusion applies. Plaintiff contends that these findings, which were made for the first time on remand from this court, exceeded the scope of the remand. It is not necessary to resolve these issues, as the legal intoxication exclusion bars the claim for benefits.[18]

---

[18] Assuming arguendo that Prudential did not exceed the scope of the remand, it credibly contends based on well-established law that the incident did not constitute an "accident" under the plan. In *Eckelberry v. Reliastar Life Insurance Co.*, 469 F.3d 340 (4th Cir. 2006), the insurer denied a claim for accidental death benefits because the decedent's blood-alcohol level was 50 percent higher than the legal limit, he knowingly put himself at risk for serious injury or death, and his injuries were therefore not unexpected. The court rejected the plaintiff's argument that the insurer's interpretation of the plan was unreasonable because drunk-driving injuries are not "highly likely" to occur and, while rejecting a *per se* rule, stated: "Whether the test is one of high likelihood, or reasonable foreseeability, federal courts have found with near universal accord that alcohol-related injuries and deaths are not 'accidental' under insurance contracts governed by ERISA." *Id.* at 344.

Defendants also contend that the felony exclusion applies on the basis that under South Carolina law, felony DUI occurs when a person (1) operates a vehicle under the influence of drugs or alcohol or both; (2) does something else against the law; and (3) proximately causes great bodily injury or death to a person other than himself, including passengers, pedestrians, and other motorists. S.C. Code Ann. § 56-5-2945. "Great bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.*

### III.  Attorney's Fees and Costs

Plaintiff has requested attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g). Section 1132(g) states in part that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Fourth Circuit has adopted a five-factor test to guide courts' discretion in determining whether an attorneys' fee award is warranted under ERISA.  The five factors are: (1) degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Quesinberry v. Life Ins. Co. Of N. Am.,* 987 F.2d 1017, 1029 (4th Cir. 1993). Plaintiff has not established a sufficient basis for this Court to award attorneys' fees and costs. The Court, therefore, in its discretion denies her request.  The Court also denies the defendants' requests in their pleadings for attorney's fee awards.  Although the court ruled in favor of the defendants, the plaintiff did not act in bad faith and was not otherwise culpable.  The plaintiff would not be financially capable of satisfying such an award.  An award of attorney's fees to the defendants would not deter others from filing actions against the plan. The plaintiff brought the action to benefit herself and not a class.  The arguments by all of the parties were well-reasoned in dealing with a complex area of the law.

## **Conclusion**

For the reasons stated above, Defendant Progress Energy's Motion for Summary Judgment (ECF No. 61) is granted as to Plaintiff's claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) on the basis of the statute of limitations. Defendant Progress Energy's Motion for Summary Judgment is also granted as to the plaintiff's benefits claim, under 29 U.S.C. § 1132(a)(1), on the basis that Progress did not administer the claims under the plan. Defendant Prudential's Motion for Final Judgment (ECF No. 63) is granted as to the breach of fiduciary duty claim on the basis that Prudential did not have a duty to inform the plaintiff of changes to the plan. That duty was retained by and belonged to Progress, the plan administrator, as opposed to Prudential, the claims administrator. Defendant Prudential's Motion for Final Judgment is also granted as to the plaintiff's benefits claim under 29 U.S.C. § 1132(a)(1)(B) because the Plan Administrator's decision was not an abuse of discretion, was the result of a deliberate, principled reasoning process, and was supported by substantial evidence. Plaintiff's [64] Motion for Summary Judgment is denied. The parties' requests for attorney's fees are denied.

**IT IS SO ORDERED**.

Florence, SC                                              s/ R. Bryan Harwell
February 6, 2015                                    R. Bryan Harwell
                                                                United States District Judge

31